This appeal is from a final divorce decree. The appellee, Jeanette Mitchell, petitioned the Circuit Court of Talladega County for a divorce from the appellant, William H. "Billy" Mitchell. Mrs. Mitchell's petition alleged incompatibility of temperament and adultery as the grounds for divorce.
After a hearing ore tenus, the trial court divorced the parties on the grounds of incompatibility of temperament and awarded alimony in gross to Mrs. Mitchell. From the trial court's decree Mr. Mitchell appeals, contending that the division of the common estate of the parties was arbitrary and excessive.
The record before us reveals that Mr. and Mrs. Mitchell were married approximately twenty-one years before they were divorced in 1976. Their marriage produced no children. At the time of the trial both parties were in their early forties and apparently in good health.
Billy and Jeanette Mitchell met while both were high school students in Birmingham. They were married while Mr. Mitchell was a sophomore at Auburn University. Mrs. Mitchell was employed during the years her husband attended college and contributed approximately $80 per month to his educational expenses. At that time Mrs. Mitchell's earnings were less than $300.00 a month; however, she remained at her mother's home (and later at a boarding house) in Sylacauga in order to reduce the young couple's living expenses. Billy Mitchell commuted frequently between Sylacauga and Auburn during this period.
Eventually Mr. Mitchell obtained his B.A. degree in accounting and immediately went to work for the Standard Oil Company. After approximately two years, Mr. Mitchell left Standard Oil and became an employee of the State of Alabama. For the last seventeen years he has worked as an auditor for the State. In his capacity as auditor Billy Mitchell receives a salary of $17,838.00 (plus approximately $1,500 in expenses) per year. Mrs. Mitchell also worked throughout the couple's marriage except for brief intervals when she was either ill or attending various business and secretarial schools. At the time of the divorce she was employed as a secretary for Kimberly Clark Company and was earning approximately $13,000 per year. Both parties are (or will be) entitled to receive health and retirement benefits from their respective employers.
Due to their collective incomes Mr. and Mrs. Mitchell enjoyed a relatively high standard of living throughout their marriage. The couple's home was built in 1973 at a cost of $55,000. A swimming pool was subsequently added and the lot (and house thereon) are currently valued at $70,000. The home, which is located in Childersburg, Alabama, is subject to a $16,000 mortgage indebtedness. Other properties held by the parties at the time of the divorce consisted of the following: household furnishings; separate checking accounts containing small sums of money; a 1976 Datsun automobile (which was driven by the wife); a 1976 Dodge motor van (which was driven by the *Page 604 
husband); and 100 shares of stock in a Childersburg bank worth approximately $2,000. In addition, Mr. and Mrs. Mitchell had free use of a furnished mobile home which belonged to Billy Mitchell's father. The mobile home was located on a lake and the couple had made numerous improvements on it during their marriage.
The trial court's award of alimony in gross provided Mrs. Mitchell with the family home in Childersburg, the household furnishings and the Datsun automobile. The court further decreed that Mrs. Mitchell would be responsible for paying the mortgage indebtedness on the home. She was divested of her right to use the furnished house on the lake.
On the other hand, Mr. Mitchell received the Dodge motor van, the bank stock, and any rights which the parties might have to use the mobile home on the lake. (Mr. Mitchell had moved into the mobile home when he left his wife and was staying there rent-free at the time the divorce was granted). In addition, Mr. Mitchell was relieved of all responsibility for the mortgage indebtedness on the couple's Childersburg home.
On appeal, appellant-Billy Mitchell contends that the trial court's award of permanent alimony to appellee-Jeanette Mitchell was excessive. We disagree.
The trial court in granting a divorce has the authority to award to the wife alimony in gross. The amount of the award is a matter within the discretion of the court and it may be determined according to the circumstances of the particular case. Davis v. Davis, 274 Ala. 277, 147 So.2d 828. And in making its determination on the size of the award, the trial court may make inquiries into such relevant factors as: the parties' future prospects; the parties' standard of living during their marriage and their potential for maintaining or exceeding that standard after their divorce; their ages, sex and health; the length of their marriage; the source (or sources) of their common property; and in appropriate situations, the conduct of the parties with reference to the cause of divorce. Sides v. Sides, 284 Ala. 39, 221 So.2d 677;Brooke v. Brooke, 57 Ala. App. 704, 331 So.2d 715.
In the present case the trial court granted the parties a divorce on the ground of incompatibility of temperament. However, the trial court properly considered a number of the aforementioned factors in determining the amount of permanent alimony to be awarded. Indeed, testimony revealed (and the court considered) the fact that Mr. Mitchell was a "high roller" who spent his money liberally on entertainment and liquor. Conversely, his wife's spending was modest and in most instances was actually used for the support and maintenance of her husband and herself. Furthermore, Mr. Mitchell refused to stay at home at night despite his wife's repeated requests that he do so — preferring instead to spend his evenings at the local Elks Club drinking with friends. And even though she disapproved of her husband's conduct, Mrs. Mitchell nevertheless made several attempts to salvage the couple's marriage; however, Mr. Mitchell resisted her efforts and eventually moved out of the parties' home.
In rendering its decree the trial court noted these facts. Such action by the court was not improper. However, the award of alimony in gross which was actually made in this case appears to be the result of the court's desire to avoid unduly burdening Mr. Mitchell with monthly alimony payments while at the same time providing Mrs. Mitchell with an adequate place to live. The decree of divorce states (in part):
 "In considering the award of alimony, the court is of the opinion that the evidence would justify an order of the Court requiring the Defendant to pay the Plaintiff $300 per month alimony. This would total $72,000 in twenty years. (This is about the time these parties could probably retire from their employment.) However, the Court has seriously considered the effect such an order would have on both parties and is hesitant to order `installment' alimony if there is a better solution via alimony in gross. *Page 605 
 "The Plaintiff's [Mrs. Mitchell's] standard of living will be decreased as a result of the divorce. Her contribution toward her husband's education furnished him with the qualifications for his job. Her help made it possible for him to have his position which he has enjoyed in the past and he has prospects of additional pay raises each year and good retirement benefits. His standard of living will suffer little by the divorce. . . . In considering alimony in gross it appears to be better for the Plaintiff to have the furnishings in the home, the Datsun car, and the Defendant's undivided interest in the home instead of cash installments each month. This home is the only place the Plaintiff has in which to live. The Defendant appears to have adequate housing rent free as long as he wants. . . ."
Thus, it is apparent that the court made a very commendable effort to treat both parties justly in its award of permanent alimony. Moreover, an award of alimony in gross will not be revised or reversed on appeal in the absence of palpable abuse.Caylor v. Caylor, Ala.Civ.App., 344 So.2d 173; Capra v. Capra,56 Ala. App. 90, 319 So.2d 286. From the record before this court we are not persuaded that the trial court palpably abused its discretion in the amount of permanent alimony it awarded to Mrs. Mitchell. Therefore, we affirm.
MOTION FOR ATTORNEY'S FEE DENIED; AFFIRMED.
WRIGHT, P.J., and HOLMES, J., concur.